IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

| | |
|---|---|
| **ANDRE FERGUSON** (#2014-0914065), | ) |
| Plaintiff, | ) |
| v. | ) Case No: 15 C 3389 |
| **OFFICER WESTBROOK**, et al., | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

On April 15, 2015 the Clerk's Office received a self-prepared Complaint authored by prisoner plaintiff Andre Ferguson ("Ferguson") pursuant to 42 U.S.C. § 1983 in which he sues Cook County Department of Corrections ("County Jail") Officer Westbrook, County Jail Division 9 Superintendent Arce, Cook County Sheriff Tom Dart and Cook County Board President Toni Preckwinkle, alleging that on February 18, 2015 Officer Westbrook struck Ferguson no fewer than five times on the face with the back of his hand. This action was automatically assigned to this Court's calendar, rather than by random assignment among the judges on this District Court, by operation of LR 40.3(b)(1)(B), which reads in relevant part:

> [A]ny complaint brought under the Civil Rights Act or 28 U.S.C. § 1331 challenging the terms or the conditions of confinement ("civil rights complaint") filed by or on behalf of a person in custody shall be assigned in the same manner as other civil cases except that --
>
> \*   \*   \*
>
> (B) a subsequent civil rights complaint shall be assigned to the judge to whom the most recently filed complaint was assigned; . . .

That LR had its origin in a concern lest the customary random assignment of such a subsequent case might create a substantial possibility that a judge with no awareness of the background that

could be gleaned from earlier lawsuits by the same plaintiff might arrive at an inappropriate result in the current case.

In any event, Ferguson's new Complaint was also assigned, for initial screening and for the potential generation of a draft ruling, to one of the staff attorneys assigned to prisoner litigation. Then, when this Court received the input from that staff attorney, it immediately noted that Ferguson had filed only his Complaint (and just the original, with no Judge's copy, at that) without the accompaniment of an In Forma Pauperis Application ("Application") coupled with the added information called for by 28 U.S.C. § 1915(a) and without the obviously less likely alternative: payment of the $400 filing fee in advance.

But Ferguson surely knows better than to submit a proposed complaint without addressing the subject of the filing fee. This District Court's records show that he has filed no fewer than 14 complaints here:[1] two in 2002, three in 2004, one each in 2005 and 2006, two in 2008, one each in 2013 and 2014 and two beside this one in 2015. There is no question that Ferguson was and is well aware of the statutory provisions of 28 U.S.C. § 1915(a) and (b) that allow prisoner plaintiffs to pay a full filing fee ($350 in that situation) in installments -- yet in this case he has done nothing at all toward fulfilling that statutory obligation or, alternatively, paying the $400 filing fee in cash.

That glaring omission on Ferguson's part understandably raised a red warning flag when this Court received the proposed work product -- a draft order -- from the assigned staff attorney. It immediately ordered a look into Ferguson's litigation background, and that revealed not only his 13 earlier lawsuits referred to above but -- far more critically -- that for years he has not

---

[1] That count leaves aside Ferguson's Social Security case filed back in 2012.

satisfied an obligation remaining from his two 2002 lawsuits to pay an aggregate of $300 that he owes in filing fees. As this Court ruled on April 17, 2002 in an order applicable to his two actions filed in that year (see Dkt. No. 6 in Case No. 02 C 2077):

> This memorandum order will confirm that until Ferguson pays the remaining balance of the aggregate $300 filing fee ($150 in each case), no further filings will be accepted from him in this District Court.

And, indeed, in Ferguson's 2006 lawsuit (Case No. 06 C 1393), at a time when this Court had him and his prior history much fresher in mind than was the case today until it started digging,[2] this Court entered an order dismissing that case based on his continued failure to clean the slate, and it later issued a like ruling in one of his 2008 cases.

Current court records show no payment of that long-standing delinquency even now, and accordingly the current action is likewise dismissed on the same ground. If however Ferguson claims to have paid his obligation and provides a satisfactory showing of such payment, he is free to file a motion under Fed. R. Civ. P. 59(e) (which requires such action to be taken within 28 days following the entry of this order), and this Court will then take appropriate action.

                                                                  */s/ William D. Shadur*

                                                                  Milton I. Shadur
                                                                  Senior United States District Judge

Date: May 1, 2015

---

[2] See Appendix.

**Appendix**

Although what is dealt with in this Appendix would have been a digression from this opinion's straightforward analysis if it had been included in the text, it may be worth a few minutes to muse on why Andre Ferguson's name alone did not figuratively jump off the page to trigger this Court's recollection of the facts that have produced that analysis, rather than this Court and the assigned staff attorney having needed to do the digging described in the text. There are indeed reasons beyond the acknowledged reality that this Court, like all human beings, is not omniscient -- and this Appendix will touch briefly on some of those reasons.

For one thing, it should be remembered that even though Ferguson's 14 earlier lawsuits (three of which were not assigned to this Court's calendar because they did not come within LR 40.3(b)(1)(B)) have an impressive sound in "pen pal" terms, they stretch over a period of 14 years, thus averaging less than one a year. During that same time frame the average number of civil cases assigned to a judge's calendar in this judicial district during a typical year is well over 300 (perhaps 400 at the outside). So even without any added factors, the sheer volume of a judge's caseload renders the theoretical benefit of the LR's direct assignment system much less effective in real world terms.

But perhaps even more important are the differences between prisoner litigation and other civil lawsuits in terms of their demands on judicial time. With other civil cases the individual calendar system means that a judge typically lives with cases in depth for substantial periods of time, generating real familiarity with the litigants and their controversies. By contrast, the need for a substantial group of staff attorneys who work on prisoner cases independently of a judge's in-chambers law clerks (and independently of a judge in the first instance) leads to a lesser degree of judicial involvement in a workup of such cases. It is also true that far more prisoner

cases than civil cases generally have a very short life, often being dispatched on legal grounds at the outset or early on.

There are other reasons as well, but there is no need to continue with their exposition because this Appendix remains a digression from the reasoning that has called for dismissal of the current action. Nonetheless it may be useful to pause on occasion to realize that the automatic assignment system created by LR 40.3(b)(1)(B) is not necessarily an unmixed blessing.